# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 07 C 4538 ) ) |
| BRIAN N. HOLLNAGEL and BCI AIRCRAFT LEASING, INC., | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

The Securities and Exchange Commission ("SEC") seeks a temporary restraining order[1] and appointment of a receiver, together with a freeze on assets, against BCI Aircraft Leasing, Inc. ("BCI") and its owner, Brian Hollnagel (referred to collectively as "BCI"), alleging that BCI and Hollnagel have engaged in a fraud on investors, in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 15 U.S.C. § 240.10b-5. All of the investors who are alleged to be victims of BCI's fraud who have not yet received repayment of

---

[1] The SEC's motion was for a temporary restraining order pursuant to 15 U.S.C. § 77t(b), which allows the Commission to seek a "permanent or temporary injunction or restraining order" when is appears that a person "is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter . . . ." I determined, after hearing argument from the parties, that I would need an evidentiary hearing. It does not seem likely that any additional evidence would be provided in an additional hearing on a temporary injunction motion and I am inclined to treat the motion as one for a temporary injunction under the statute. However, I will consider any further argument provided by the parties within five days of this order.

their investment request that I deny the SEC's motion.

I held an evidentiary hearing with respect to the SEC's motion on August 16 and 20, 2007. For the reasons stated in this opinion, I grant the SEC's motion for a temporary injunction prohibiting any further violations of the federal securities laws, and deny the request for the appointment of a receiver and a freeze on assets. The latter is without prejudice to reconsideration if the 13 remaining investors who have agreed to a buyout[2] are not paid all of their principal investment as directed in this opinion, as BCI has represented will occur if the SEC's motion is denied.

The SEC's complaint alleges that BCI engaged in a fraudulent scheme from 1999 through 2006, under which BCI offered and sold membership shares in limited liability corporations ("LLCs") in which BCI represented that investor funds would be used to buy commercial aircraft to be leased to commercial airlines. Investors were to receive a given percentage of their investment every month for the duration of the LLC, as well as a share of any profits if an aircraft owned by the LLC was sold. The complaint alleges, and it is undisputed, that the money from the various LLCs was commingled in various BCI accounts. Some of the LLCs were also oversubscribed. In some cases aircraft were not purchased by the specific LLC, but were instead purchased in the name of BCI. Furthermore, the last complete audit of the LLCs or BCI was in 2004. The SEC claims that the assets of BCI are a negative $6.6

---

[2] One investor declined BCI's offer of a buy-out and remains an equity investor in the amount of $350,000.

million, although the SEC also claims that the investors are entitled to share in the $95,000,000 in assets that BCI says it owns as a result of a buyout of the investors.  The SEC agrees that BCI's books and records do record all money paid into the LLCs as well as money paid out and are current in that respect up to at least June 30, 2007.

The 102 investors in the LLCs have received all promised monthly payments.  The investment paid a return of from 10 to 15 percent per annum, paid monthly.  The terms of the LLCs varied between 60 and 84 months.  At any time, BCI could sell the aircraft, thus ending the LLC.  In such case, investors would be entitled to the return of their original investments and 50 percent of the residuals over the book value or net profit on the sale after payment of debt.  Instead, BCI could also substitute new aircraft.  The LLC agreements provided that BCI could redeem an investor's interest at any time for an amount equal to the investor's purchase price plus any accrued but unpaid distributions.

BCI did not exercise its right of redemption.  Instead it offered to buy out each of the investors.  Initially, early in 2007, it sent a letter to its investors informing them that the aircraft were aging and that it believed this was the optimum time to close out the LLC investments.  (The SEC argues that this was probably untrue but has presented no evidence on this question.) BCI offered to terminate each LLC by paying investors their capital contribution.  Fifty seven investors accepted and BCI paid out $13

3

million to them.  It sent a second letter, indicating that it would in the future invite the remaining investors to participate in a new company holding 100 percent of BCI's aircraft, with a value in excess of $1.2 billion.  The letter offered to repurchase the investors' interests in exchange for a promissory note with no collateral but with the same interest rate as the monthly returns the investors had been receiving.  All but one investor accepted this offer.  Although the notes apparently are not due until 2008 (from the record it is unclear whether all are the same), BCI represents that it has or is in the process of acquiring the funds to pay most of them now, and intends to do so if allowed by this court.  It also represents that it believes that it will have funding to pay the remaining investors within 30 to 60 days, again if this court does not freeze BCI's assets and appoint a receiver.

The SEC's claims in this action have not been entirely consistent.  In its moving papers, it stated that the relief it seeks is necessary because "BCI is in poor financial condition and over $48 million in investor funds are yet to be repaid."  (Pl.'s Mem. in Support of its Emergency Mot., at 2.) At the hearing, however, it seemed to back away from the contention that BCI was in poor financial condition, instead arguing that BCI has accumulated the $95 million in assets that BCI claims by a continuing fraud on investors.

I conclude that the SEC has not sustained its allegation that BCI has a negative net worth of $6.6 million.  The SEC based its conclusions regarding BCI's financial situation on accounting

4

reports that it knew were outdated and on a cash flow statement that its own accountant agrees does not show the profitability of the company. It did not attempt to obtain more accurate information and submitted the information it knew was inaccurate to the court as though it accurately stated BCI's financial condition. Admittedly, much of this is BCI's fault. BCI has failed to maintain adequate accounting records. However, on April 18, 2007, Deloitte and Touche completed a draft audit of BCI and selected LLCs through 2006, which report was given to the SEC. The SEC argues that the report is not final (the accounting firm stopped work when the SEC got involved) and that it is for a make-believe company because it includes LLCs. The assets of these LLCs, however, belong to BCI following the 2007 buy-outs. The Deloitte report concludes that the combined, non legal BCI entity's equity is approximately $100 million. BCI's accountant testified that using the Deloitte figures and adding BCI's assets not included in the Deloitte report, as of June 30, 2007 BCI's equity exceeds $95 million. Based on the limited evidence before me, I found the accountant, Mr. Collier, to be a credible witness. Most of the disagreement between the SEC's evaluation of BCI's assets and BCI's statement of its assets rests on whether the LLC assets are included in the assets of BCI. The SEC does not dispute, however, that BCI has bought out all but one of the LLCs. Thus, BCI's assets include those formerly owned by the LLCs. That leaves the question whether BCI has the financial ability to pay the $48 million in notes now held by the former LLC investors who have not

yet been paid.  Unfortunately, despite two days of hearing, no one adequately addressed this issue.  BCI says it can immediately pay eleven of the note holders, leaving the three largest in an amount of $36 million.  As to those, it claims it expects to be able to pay them within 30 to 60 days.  The SEC did not challenge these assertions.

The SEC alleges additional financial mismanagement.  It complains that BCI's owner, Hollnagel, has taken excessive amounts out of the company.  Hollnagel's salary withdrawals have not been excessive.  He did take money out of the company to purchase a home in Aspen, but has repaid the money after obtaining a mortgage.  The SEC also complains that brokers' fees were paid to obtain the LLC investments.  The LLC documents, however, allowed such fees and there is no showing that they were unreasonable in amount.  The SEC further alleges that BCI improperly charged management fees to the LLCs, and some LLC tax returns do reflect such a management fee.  However, the evidence is unclear whether investors' returns were ultimately reduced by management fees.  The SEC also presented evidence that BCI pledged some LLC assets as collateral for one bank loan, so at least one LLC is potentially at risk of losing assets if BCI defaults on that loan and the bank recovers the LLC's pledged collateral.

The SEC's claim that has the most substance is that money invested by LLC investors was not used to buy particular aircraft, as represented to investors, and in some cases aircraft were sold and the investors were not given an accounting.  There is little

doubt that BCI did not adhere to the representation that it made in offering each LLC investment that the money invested in an LLC would buy a particular aircraft. In some cases, none of the money went to buy an aircraft. Nevertheless, the investors received the monthly payments called for in the LLC and, under the buy-back agreements, have either been paid or are to be paid their principal investment. Thus, their claim of damage (assuming they all receive back the principal) is limited to profit on the sale of the aircraft or subsequent aircraft if a replacement aircraft was sold during the life of the investment. The SEC identified one such transaction, in which BCI has said it will pay the LLC's share of the profits (estimated to be about $1 million). It points to another transaction in which it says it can trace amounts from one oversubscribed LLC and sales proceeds from the transaction noted above. It says these funds purchased aircraft which were later sold, and the proceeds kept by BCI. BCI did not counter this testimony.

The SEC may obtain a temporary injunction against further violations of the securities laws upon a substantial showing of likelihood of success as to (a) current violations and (b) a risk of repetition. *SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998) (citation omitted). The SEC has satisfied its burden in this case. It is undisputed that BCI made material representations in its LLC offering documents that the investors were buying shares in an LLC that would purchase a specific aircraft that in many cases were not true. Although all investors have obtained a portion of what was

promised, in that each has been paid the amount promised as an annual return, and some have also obtained return of their capital investment, fourteen investors, holding the largest share of the investments, remain at risk of losing their money as a result of BCI's misrepresentations. In addition, certain investors may have unknowingly been deprived of profits upon the sale of aircraft during the life of the LLC. There can be no doubt that BCI and Hollnagel acted with scienter. There is also a risk of repetition. While BCI notes that it has not sold any new interests since 2006, in the spring of 2007 it told some of the noteholders that it was planning new offerings. In addition, it presently owes LLC investors $48 million. Thus, the SEC is entitled to a preliminary injunction against further violations of the securities laws.

The SEC also seeks appointment of a receiver and to have BCI's assets frozen. The noteholders who are owed the $48 million are opposed to it, believing, as BCI argues, that BCI's owner, Hollnagel, is more likely to be able to maintain BCI as an ongoing business and therefore to obtain the funds to pay their notes than a receiver who does not have Hollnagel's skill in buying and selling airplanes. The investor noteholders are also concerned that appointment of a receiver and a freeze on assets will, at the very least, delay repayment of their investment.

The difficulty in evaluating the necessity of a receiver and an asset freeze is that the record does not adequately show whether BCI will be able to repay the noteholders. Since the SEC has not shown at present that BCI will not be able to pay the notes as BCI

8

has represented to the court, I will not freeze BCI's assets or appoint a receiver at this time, but with these specific conditions: BCI must report to the SEC on a weekly basis its progress in paying off the noteholders, provide an immediate accounting of the LLC in which one investor continues to hold equity, and must provide to the SEC on a weekly basis all proposed withdrawal of funds. Significant withdrawals (in excess of $20,000) may be made only with 48 hours notice to the SEC. All money paid to BCI or any BCI affiliate, including LLCs and Hollnagel in connection with BCI, shall be reported to the SEC on a weekly basis. If the noteholders are not repaid within 60 days, or for any other reason it becomes apparent before that time that BCI will not be able to pay its noteholders, the SEC shall inform the court and I will reconsider the SEC's request for a freeze of assets and appointment of a receiver. Discovery in this case will be expedited, to be concluded by January 31, 2008.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 22, 2007